(Common Law.)

## Mechanics' Bank of Alexandria v. The Bank of Columbia.

The 17th section of the act, incorporating the Mechanics' Bank of Alexandria, providing "that all bills, bonds, notes, and every other contract or engagement on behalf of the corporation, shall be signed by the President, and countersigned by the Cashier; and the funds of the corporation shall in no case be liable for any contract or engagement, unless the same shall be signed and countersigned as aforesaid," does not extend to contracts and undertakings implied in law.

Where a check was drawn by a person who was the cashier of an incorporated Bank, and it appeared doubtful upon the face of the instrument, whether it was an official or a private act, parol evidence was admitted to show that it was an official act.

The act of agents do not derive their validity from professing on the face of them to have been done in the exercise of their agency.

The liability of the principal depends upon the facts, 1st. That the act was done in the exercise, and, 2dly. Within the limits of the power delegated.

In ascertaining these facts, as connected with the execution of any written instrument, parol testimony is admissible.

Error to the Circuit Court for the District of Columbia.

This was an action of assumpsit, brought by the defendants in error against the plaintiffs in error, on the following check : ·

No. 18.      Mechanics' Bank of Alexandria,

June 25th, 1817.

CASHIER *of the Bank of Columbia,*

*Pay to the order of P. H. Minor, Esq. Ten Thousand Dollars.*

Wm. PATON, Jr.

$10,000

1820.

Mechanics'
Bank
v.
Bank of Co-
lumbia.

This check was offered in evidence by the plaintiff below, and testimony to prove that the said Paton, before, at the time, and subsequent to the drawing of the said check, was cashier of the said Mechanics' Bank, and the said Minor the teller thereof; and in order to prove that the said check was drawn by the said William Paton in his capacity as cashier, and was so understood by him, and so understood by the said Bank of Columbia, their officers and servants; evidence was further offered to prove, that from the 5th of May, 1817, to the time of drawing the said check, there was kept in the said Mechanics' Bank, by the proper officer thereof, a book of printed checks in blank, for the purpose of being used by the cashier, in drawing his official checks; and that the check in question had been cut out of the said book: That the said Cashier, in his official character, had frequently used the blank checks out of the said book, in drawing upon other banks in the district, and there was no other difference between the checks so drawn, and the check in question, other than the letters " Cas." or " Ca." being superadded to the name of the said William Paton, Jun. in the checks

1820.

Mechanics'
Bank
v.
Bank of Co-
lumbia.

so drawn upon the said other banks : That although the said check book was intended for the use of the bank, the checks in the same were sometimes used for other purposes : That the business of the said banks was sometimes managed through the medium of letters ; and in such official correspondence, it was usual to subscribe the names of the cashiers, with the addition of some letters denoting their capacity of Cashier ; but such form was sometimes omitted, and was in no case deemed indispensable, when, from other circumstances, such correspondence appeared to be official. The plaintiffs further offered in evidence two letters of the said William Paton, directed to William Whann, Cashier of the Bank of Columbia, each signed with the proper name of the said William Paton, without the addition of Cashier, or the letters " Cas." or " Ca." one of which letters related to the private concerns of the said William Whann, and the other to the concerns of the bank.

Evidence was further offered to prove that the check given in evidence as aforesaid, was, (together with a number of other checks, drawn by the said William Paton upon other banks, with the addition in his signature of the letters " Ca." and " Cas." and cut out of the official check book,) sent by the said Paton, on the 12th of July, 1817, by the hands of the said Philip H. Minor, then being teller as aforesaid, to Richard Smith, Cashier of the Office of Discount and Deposit of the Bank of the United States at Washington, to be paid in liquidation of a balance due from the said Mechanics' Bank to the said Office of Discount and Deposit : That the said letter was

delivered by the said Minor to the said Smith, and the checks and moneys contained in the same were applied to the credit of the said Mechanics' Bank : That among the checks so sent, was one for $17,626 5, written upon, and cut out of the check book aforesaid, and in the words and figures following, to wit :

*Mechanics' Bank of Alexandria, July* 12, 1817. *No.* 32.

Cashier of the Branch Bank of the United States, Washington—Pay to the order of Philip H. Minor, amount of discount made me, which I believe is seventeen thousand six hundred and twenty-six dollars and five cents.

WM. PATON, Jun.

That the said Richard Smith, about the 17th of July, 1817, did cause the same to be presented to the Bank of Columbia for payment, and the same was accordingly paid, and was thereupon immediately charged to the said Mechanics' Bank.

Evidence was further offered to prove that the said Richard Smith considered the said check as the official check of the said William Paton, and it was so paid by him ; and that the Cashier of the Bank of Columbia also considered it as the official check of the said Paton, and it was so paid by him.

Evidence was further offered, on the part of the Mechanics' Bank, to prove that the said William Paton, at the time he drew the said check, declared it was his private individual check ; that he had

funds in the Bank of Columbia to meet it, and that it was passed by him to the said Mechanics' Bank as the individual check of the said William Paton. And evidence was further offered to prove that the Mechanics' Bank paid to the said Paton the amount of the said check.

Upon the evidence thus offered by the plaintiffs below, the counsel for the defendants objected to the whole of the said evidence, and insisted, that if the said check for 10,000 dollars, could be used as evidence against the said Mechanics' Bank, that the character of the said check could only be decided by the check itself, and that no parol or other testimony could be received to explain the same, and objected to the testimony offered upon that ground. But the Court overruled the objection, and gave it as their opinion to the jury, that the said check was, in connexion with the other, evidence, proper and competent evidence in this case against the said Mechanics' Bank, and that it was competent to explain the character of the said check; or, in other words, to prove, by parol or other testimony, that the said check was drawn under such circumstances, and in such a manner, as justified the plaintiffs in considering it as an official check, and paying it as such, and charging the same to the debit of the defendants. And the evidence offered as aforesaid, with the said check, was admitted by the Court, and given in evidence to the jury.

The defendants below then prayed the opinion of the Court, and their instruction to the jury, that the check for 10,000 dollars, produced in evidence ·

by the plaintiffs, is, on the face of it, a private, and not an official check, and of itself cannot, in law, charge the Mechanics' Bank with the payment of the said 10,000 dollars; and that the said William Paton was liable in his individual character for the payment of the same. Which opinion the Court refused to give.

They also prayed the Court to instruct the jury, that the check aforesaid was, upon the face of it, *prima facie* evidence of its being the private individual check of the said William Paton, and the possession of the said check by the said Mechanics' Bank, if proved to be in their possession, was *prima facie* evidence that they had paid a value for it; and that unless the Bank of Columbia should satisfy the jury by other evidence than the said check, that it was an official check of the cashier of the said bank, that the jury should find their verdict for the defendants. Which instruction the Court refused to give.

The defendants below also prayed the Court to instruct the jury, that if they should be of opinion, that the check was drawn by the said William Paton as his individual check, and was received by the said Mechanics' Bank, as the individual check of the said William Paton, and that the bank paid to the said Paton the full amount of the said check, that then the said bank having received the amount thereof from the bank of the United States as aforesaid, would have a right to retain the amount of the said check as against the said Bank of Columbia, notwithstanding the said Bank of Columbia may have been under an impression that it was the official check

1820.
Mechanics'
Bank
v.
Bank of Co-
lumbia.

of the said William Paton. Which instruction the Court refused to give.

A bill of exceptions was filed, and a verdict and judgment thereon having been rendered for the plaintiff, the cause was brought by writ of error to this Court.

*March 8th.*

Mr. *Swann*, and Mr. *Lee*, for the plaintiffs in error, argued, 1. That parol evidence to prove the character or capacity in which the check was drawn, was clearly inadmissible. The check bears, on the face of it, all the qualities of a bill of exchange. It binds the drawer in his individual capacity. When it is competent for a party to bind himself individually, parol evidence cannot be introduced to show, that what he has in fact done in his own name, was intended to be done as an agent for others.[a] If one of several partners promise individually to pay a debt, he will not be permitted to show that it was due jointly from himself and his partners.[b] And, generally, all parol evidence to contradict, or vary, a written instrument, is inadmissible.[c] The object of the testimony in the present case, is, not to show that the drawer is liable to a greater or a less extent than that expressed on the face of the check, but to make a corporation, whose servant he was, liable for a debt which, according to the face of the instrument, is a private debt. For if the check, on the

a Frontin v. Small, Lord *Raym.* 1418. *Salk.* 96. Wilks v. Pack, 2 *East,* 142. Preston v. Merceau, 2 *Wm. Black.* 1249. Meres v. Ansell, 3 *Wils.* 275.

b Murray v. Somerville, 2 *Camp. N. P.* 99.

c Russell v. Clarke, 3 *Dall.* 424. and the cases there cited.

face of it, was an official one, the evidence was un-
necessary ; and introducing it is an admission that
the instrument itself was not sufficient to bind the
corporation. 2. The evidence of the debt being a
written instrument, the construction of it is matter
of law for the decision of the Court, and the Court
ought to have instructed the jury, that the check was,
on the face of it, a private, and not an official check,
and could not bind the Mechanics' Bank. 3. But
at all events, the check was *prima facie* evidence of
its being the private check of the drawer, and the
possession of it by the plaintiffs in error, was also
*prima facie* evidence of their having paid a valuable
consideration for it. 4. Again ; this action cannot
be maintained, because the contract upon which it is
brought was not made in conformity with the char-
ter of the Mechanics' Bank, which provides, (s. 17.)
" that all bills, bonds, notes, *and every other contract
or engagement* on behalf of the corporation, shall be
signed by the president, and countersigned by the
cashier ; and the corporation shall, *in no case, be lia-
ble for any contract or engagement,* unless the same
shall be signed and countersigned as aforesaid."

Mr. *Jones* and Mr. *Key*, *contra*, insisted, 1. That
the check, upon the face of it, did not purport to be
the private check of Paton, but the check of the
bank, drawn by him as its Cashier, and that the
presumption was, that it was an official act. 2. But
supposing it to be equivocal on the face of the in-
strument, whether he acted in his official or private
capacity, extrinsic parol evidence, to show in what
capacity he acted, was admissible. This would not

be evidence to contradict the written instrument, but only to explain it."  Suppose the Bank of Columbia had sued Paton, the date and entire face of the check would have been sufficient to defeat their action. There was enough to raise a presumption that he acted officially, because the act was within the scope of his authority.   No rule of law obliged him to add to his name any designation of his official character ; and even supposing him to be liable in his individual capacity, it does not follow that his principals are not liable for what he has done, the presumption being strongly in favour of the official character of the act.   And if it be doubtful whether he is personally liable to the Bank of Columbia, he is certainly liable to the Mechanics' Bank, whose servant he was ; who had the best means of knowing and correcting the fraud or mistake ; and who, upon the principle of the rule *de damno evitando*, ought to bear the loss. 3. As to the law incorporating the Mechanics' Bank, it has no application to this case, unless it be contended that it would extend to the case of a deposit, and every other case where the law implies a contract.   The action is not brought upon any such express undertaking as the act contemplates must be signed by the President, &c. ; but upon an undertaking which the law implies, and which it may as well imply in the case of a corporation as of an individual.

*March* 13th.   Mr. Justice JOHNSON delivered the opinion of the Court.   The merits of this case lie within a very limited compass.   The question is, whether a certain

a Dexter v. Hodgson, 1 *Cranch*, 345.

act, done by the Cashier of a Bank, was done in his official or individual capacity ? Had the draft, signed by Paton, borne no marks of an official character on the face of it, the case would have presented more difficulty. But if marks of an official character not only exist on the face, but predominate, the case is really a very familiar one. Evidence to fix its true character becomes indispensable.

1820.

Mechanics' Bank v. Bank of Co- lumbia.

It has been contended, but the argument was not pressed with much confidence, that this defendant could not be bound otherwise than in conformity with the 17th section of the charter; by which it is enacted, " that all bills, bonds, notes, and every other contract or engagement, on behalf of the corporation, shall by signed by the President, and countersigned by the Cashier; and the funds of the corporation shall in no case be liable for any contract or engage- ment, unless the same shall be signed and counter- signed as aforesaid."

The 17th sec. of the charter incorporating the Mechan- ics' Bank, not applicable to this case.

It is to be hoped this argument was not intended to reach the case of a deposit of money ; and yet if it proves any thing, it proves that no contract in law could be imputed to this bank. The truth is, that a check is properly neither a bond, bill, or note, with regard to the bank drawn upon, but an acquittance. And the contract arising out of a payment upon it, is a contract for money advanced, and must be so declared upon. It is true that checks are generally made payable to bearer, and this was made payable to order; but it is in evidence that it was drawn as a check, and paid as a check, and the declaration con- tains only the common money counts.

Of the six exceptions in the transcript of the

1820.

Mechanics'
Bank
v.
Bank of Co-
lumbia.

Presumption
that the check
was official,
and parol tes-
timony admis-
sible to ex-
plain the am-
biguity.

record, the 1st, 2d, 4th, and 5th, are taken on behalf of the Mechanics' Bank of Alexandria. Upon comparing these exceptions with the evidence, it does not appear that they affirm any other proposition growing out of that evidence, but that the check, on the face of it, purported to be the private check of Paton, and no extrinsic evidence could be received to prove the contrary.

The only ground on which it can be contended that this check was a private check, is, that it had not below the name the letters *Cas.* or *Ca.* But the fallacy of the proposition will at once appear, from the consideration, that the consequence would be, that all Paton's checks must have been adjudged private. For no definite meaning could be attached to the addition of those letters without the aid of parol testimony.

But the fact that this appeared on its face to be a private check, is by no means to be conceded. On the contrary, the appearance of the corporate name of the institution on the face of the paper, at once leads to the belief that it is a corporate, and not an individual transaction : to which must be added the circumstances, that the cashier is the drawer, and the teller the payee; and the form of ordinary checks deviated from by the substitution of *to order,* for *to bearer.* The evidence, therefore, on the face of the bill, predominates in favour of its being a bank transaction. Applying, then, the plaintiff's own principle to the case, and the restriction as to the production of parol or extrinsic evidence could have been only applicable to himself. But, it is enough for the purposes of the defendant to establish, that there exist-

ed, on the face of the paper, circumstances from which it might reasonably be inferred, that it was either one or the other. In that case, it became indispensable to resort to extrinsic evidence, to remove the doubt. The evidence resorted to for this purpose was the most obvious and reasonable possible, viz. that this was the appropriate form of an official check; that it was, in fact, cut out of the official check-book of the bank, and noted on the margin; that the money was drawn in behalf of, and applied to the use of the Mechanics' Bank; and by all the banks, and all the officers of the banks through which it passed, recognized as an official transaction. It is true, it was in evidence that this check was credited to Paton's own account, on the books of his bank. But it was done by his own order, and with the evidence before their eyes, that it was officially drawn. This would never have been sanctioned by the directors, unless for reasons which they best understood, and on account of debits which they only could explain.

It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. These

1820.

Mechanics'
Bank.
v.
Bank of Columbia.

The acts of agents, as connected with the execution of written instruments, how far explainable by parol evidence.

facts are necessarily inquirable into by a Court and jury; and this inquiry is not confined to written instruments, (to which alone the principle contended for could apply,) but to any act with, or without writing, within the scope of the power or confidence reposed in the agent; as, for instance, in the case of money credited in the books of a teller, or proved to have been deposited with him, though he omits to credit it.

Judgment affirmed.